1  LEE TRAN & LIANG APLC
     James M. Lee (Bar No. 192301)
2    K. Luan Tran (Bar No. 193808)
     Enoch H. Liang (Bar No. 212324)
3  601 S. Figueroa Street, Suite 2820
   Los Angeles, CA  90017
4  Tel: 213-612-3737
   Fax: 213-612-3773
5  Email: jml@ltlcounsel.com
           klt@ltlcounsel.com
6          ehl@ltlcounsel.com

7  Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID LUBOCKI, an individual, *et al.*, | Case No. CV 07-2959-SJO (JCx) |
| Plaintiffs, | Judge: Hon. S. James Otero |
| v. | |
| ZIPREALTY, INC., a Delaware Corporation, | **APPLICATION FOR ORDER TO SHOW CAUSE RE: CONTEMPT;** |
| Defendant. | **MEMORANDUM OF POINTS AND AUTHORITIES** |
| | [*Declaration of James M. Lee filed concurrently*] |

**TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD AND TO CHASE BANK, N.A. AND THE CALIFORNIA STATE FRANCHISE TAX BOARD:**

PLEASE TAKE NOTICE that on March 2, 2010 before the Hon. S. James Otero, in Courtroom 880 of the above-captioned Court, located at 255 East Temple Street, Los Angeles, California 90012, Plaintiffs will and hereby does submit this application for an Order to Show Cause Regarding Civil Contempt against Chase Bank, N.A. and the California State Franchise Tax Board for violation of this Court's December 30, 2008 order.

This application is based on based on this Notice, the Memorandum of Points and Authorities and Declaration of James M. Lee filed concurrently herewith, such other matters of which this Court may take judicial notice, and such other oral and documentary evidence and argument as may be presented to the Court prior to or at the time of this application.

DATED: March 1, 2010                     LEE TRAN & LIANG APLC

By: _____
James M. Lee
Attorneys for Plaintiffs

# **MEMORANDUM OF POINTS AND AUTHORITIES**

## **Preliminary Statement**

As this Court is aware, former class counsel for Plaintiffs, Mr. Sandeep Baweja, misappropriated over $2,720,000 of settlement funds from his client trust account related to the Ziprealty class action. On December 30, 2008, as a result of the Mr. Baweja's admissions, this Court ordered Mr. Baweja to place all remaining class settlement funds in a blocked client trust account which precluded further withdrawals without permission of the court.

In compliance with the Court's order, Mr. Baweja created the "Lubocki Class Action Trust Account" ("Trust Account") at Washington Mutual Bank (now under the ownership of Chase Bank) (hereinafter "Chase Bank"). In conjunction with the creation of this blocked account, the Bank was apparently provided with copies of this Court's December 30, 2008 order and specific instructions not to release the funds held in trust for Plaintiffs absent a court order.

Class counsel learned in January 2010 from Mr. Baweja's counsel, that at some point between September 18, 2009 and December 2009, in defiance of this Court's order, the Bank allowed the State of California Franchise Tax Board ("FTB") to improperly take $23,139.06 from the Trust Account to purportedly satisfy back taxes owed by Mr. Baweja.

Class counsel sent a demand letter to both Chase Bank and the FTB to return the funds. However, neither Chase Bank nor the Franchise Tax Board has submitted any response to the letter. Accordingly, by this application, Plaintiffs respectfully request that the Court set an order to show cause to Chase Bank and the FTB regarding civil contempt seeking repayment of monies improperly taken from the Trust Account in violation of this Court's December 30, 2008 order.

## Statement of Facts

As this Court will recall, Messrs. Franceschi and Baweja filed *Lubocki et al. v. ZipRealty, Inc. (Case No: 2:07-cv-02959-SJO-JCx (C.D. Cal))* in May 2007 for violations that stemmed from ZipRealty's policies on reimbursement and commission upon termination. On November 19, 2007, the Court approved a $3.55 million settlement. On March 10, 2008, this Court entered a Final Order and Judgment, approving the Class Action Settlement and awarding attorney fees to Messrs. Baweja and Franceschi in the amount of 25% of the gross settlement fund. After the Court approved costs and fees, class members were entitled to approximately $2.6 million. *Lee Decl.*, at ¶2 Exh. "A" [Final Order and Judgment].

On March 19, 2008, Messrs. Baweja and Franceschi received the full settlement amount of $3.55 million. *Lee Decl.*, at ¶3 Exh. "B" [12-24-08 Baweja Declaration]. However, six months passed and Messrs. Baweja and Franceschi failed to disburse any of the settlement funds. *Lee Decl.*, at ¶3 Exh. "B" [12-24-08 Baweja Declaration].

On December 24, 2008, Mr. Baweja filed a Motion to Withdraw as Class Counsel, admitting that within weeks of receiving the settlement funds, he actually misappropriated over $2,720,000 and had squandered all but $54,846.90 of Plaintiffs' funds.[1] *Lee Decl.*, at ¶3 Exh. "B" [12-24-08 Baweja Declaration].

Thereafter, on December 30, 2009, this Court ordered Mr. Baweja to "transfer all remaining class settlement funds to a blocked account that precludes further withdrawal without permission of the Court." *Lee Decl.*, at ¶4 Exh. "C" [December 30, 2009 Court Order]. Mr. Baweja had already created an account at (then) Washington Mutual Bank in Irvine, California (locate at 5392 Walnut

---

[1] Mr. Baweja was mistaken as to the accumulated total amount. There was actually $70,896.06 in the Chase Bank account as of January 23, 2009, and apparently reached as high as 71,158,81 (due to accruing interest) before the State of California and Chase Bank withdrew $23,139.08 on September 23, 2009. *Lee Decl.*, at ¶5 Exh. "D" at Pages 31 and 63 [January 12, 2010 Letter from Mr. Baweja's counsel].

4

Avenue, Irvine, California), and opened an interest-bearing money market account entitled "Lubocki Class Action trust Account," Account Number 327862808 (referred to herein as the "Trust Account"). *Lee Decl.*, at ¶5 Exh. "D" at Pages 30-31 [January 12, 2010 Letter from Mr. Baweja's counsel and accompanying exhibits].

On December 30, 2008, Mr. Baweja went to the bank to place the court ordered restriction on withdrawals from the account and provided a copy of this Court's December 30, 2008 order to the Bank's Ms. Shadi Tehrani. The Bank's assistant manager confirmed the notation of the Court's order in its records. *Id.* at Pages 26, 76, and 85.

However, sometime in September of 2009, the FTB sent an "Order to Withhold Personal Income Tax" of Sandeep Baweja in the amount of $23,139.06 for the tax years 2005-2007 to Chase Bank. The FTB's "Order" did not identify any specific account numbers and instead was directed to "all accounts…. belonging to the taxpayer." *Id.* at Pages 71-75.

At some point between September 2009 and December 2009, despite being specifically being advised by Mr. Baweja and his counsel of the status of the block account, (id. at Pages 76-81), Chase Bank transferred funds from the blocked Trust Account to the FTB in violation of this Courts' Order. *Id.* at Page 63.

On January 12, 2010, counsel for Mr. Baweja (Mr. Michael Proctor and Mr. Jeff Rutherford) met with James Lee class counsel. During this meeting, Messrs. Proctor and Rutherford handed what is attached to *James M. Lee Declaration* as Exhibit "D" (Pages 25-85).

On January 19, 2010, class counsel sent a demand letter to Chase Bank and the FTB to return the funds. *Lee Decl.*, at ¶6 Exh. "E" at Pages 86-95 [January 19, 2010 Letter from James M. Lee to Chase Bank and FTB]. Because class counsel has not received any response, the following application is being filed.

# Argument

## I. LEGAL STANDARD FOR CIVIL CONTEMPT

When applying for an Order to Show Cause regarding contempt for violation of a court order, the petitioning party must cite the provision(s) of the order to be enforced, allege that the respondent has not complied with such provisions, and ask the court, on the basis of that representation, to order the respondent to show cause why he should not be adjudged in contempt and sanctioned." *In re Grand Jury Proceedings,* 142 F.3d 1416, 1424 (11th Cir. 1998). If the court is satisfied that the application presents sufficient grounds for contempt, it will issue the OSC and set a time and date for the hearing. *See Reynolds v.* Roberts, 207 F3d 1288, 1298, n.19 (11th Cir. 2000).

Where, as here, because the contemptuous act occurred outside the Court's presence, a valid order and judgment of indirect contempt must cover the following elements: the issuance of an order, the respondent's knowledge of the order, the respondent's ability to obey the order, and that the respondent failed to comply with the order. *See United States v. City of Jackson, Miss.*, 359 F.3d 727, 731 (5th Cir. 2004).

Non-parties may also be bound under the *All Writs Act* (28 U.S.C. § 1651(a)), which authorizes courts to compel action by nonparties who "are in a position to frustrate the implementation of a court order or the proper administration of justice." *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977); *see also United States v. City of Detroit*, 329 F.3d 515, 522 (6th Cir. 2003) (*en banc*).

For instance, in *Land v. Dollar*, 188 F.2d 629 (DC Cir. 1951), the court held that where a trial court issued an order barring defendant from disposing of the possession of shares of company stock, and the Secretary of Commerce, who was not a party to the litigation, acquired possession of those shares of stock after the

entry of the order, the non-party Secretary of Commerce's obedience to the order was enforceable by the same process as if he were a party.

Also, in *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, (9th Cir. 1998) the Ninth Circuit held that the district court did not abuse its discretion holding a non-party in contempt where nonparty had notice of the order at issue (in that case a judgment for rescission) and the non-party had assisted the original parties in violating the order. The Ninth Circuit reasoned that *Federal Rules of Civil Procedure* Rules 70 and 71 provide for the enforcement of judgments against non-parties in limited circumstances and that "Rule 71 was intended to assure that process be made available to enforce court orders in favor of and against persons who are properly affected by them, even if they are not parties to the action." *Peterson*, 140 F.3d at 1324 (citing *Westlake North Property Owners Ass'n v. Thousand Oaks,* 915 F.2d 1301, 1304 (9th Cir. 1990)).

## II. <u>CHASE BANK AND THE FTB SHOULD BE HELD IN CIVIL CONTEMPT AND THE TRUST ACCOUNT MONEY SHOULD BE RETURNED</u>

Due to Chase Bank's and the FTB's violation of this Court's December 30, 2008 order, trust funds that this Court ordered to be blocked has again been taken, this time, to pay off Mr. Baweja's outstanding personal tax debt. And although Mr. Baweja and his counsel notified Chase Bank and the FTB of this Court's order, they ignored it. Accordingly, holding these parties in civil contempt for violation of this Court's order is the appropriate remedy for this grievance.

All of the elements for civil contempt mentioned above are present. One, there is no question that this Court issued a valid order to set aside the funds in a blocked bank account. Two, there is no question that the Bank was given notice of the Order and prepared the Trust Account pursuant thereto. Further, the FTB

would presumably have knowledge that it was tapping into an account blocked by Court order for the benefit of the Plaintiffs class, not Mr. Sandeep's personal funds. Three, there is no question that the Bank and the FTB violated this Court's December 30, 2008 order when they took money out of Plaintiff's trust account to pay Mr. Baweja debts without court permission.

Despite the fact that the FTB and the Bank are not parties to this action, this does not limit this Court's power to find them in contempt of its December 30, 2008 order.  Like the Secretary of Commerce in *Land v. Dollar*, who took possession of shares of company stock that were protected by a court order,  the FTB has taken possession of monies that were protected by this Court's December 30, 2008 order for the benefit of Plaintiffs' class.  Having taken possession of the funds from the Trust Account, the FTB is as much subject to this Court's order regarding those funds as the parties themselves.

Likewise, Chase Bank, like the non-parties in *Peterson* had direct knowledge of the Order.  Copies of the order were provided to Chase Bank's bankers and special instructions were placed upon the Trust Account.  In fact, Chase Bank's Assistant Manager, Joe Thomas, admits that on the Bank's records, there was a restriction "COURT ORDER: NO WITHDRAWALS WITHOUT COURT ORDER PERMISSION." *Lee Decl.,* at ¶5 Exh. "D" at Page 85 [January 12, 2010 Letter from Mr. Baweja's counsel].  Nonetheless, Chase Bank violated the order by releasing funds to the FTB without this Court's order or approval.  The FTB's levy sought only Mr. Sandeep's personal money, not client money held in a blocked Trust Account.  Chase Bank had no right to release Plaintiffs' money to the FTB to pay off Mr. Sandeep's personal tax debt.  As such, Chase Bank was clearly in a position to frustrate compliance with this Court's order and should be no less bound by its terms than the parties themselves.

## Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court set an order to show cause regarding civil contempt seeking repayment of monies improperly taken from the Trust Account in violation of this Court's December 30, 2008 order from the Bank and the FTB.

DATED: March 1, 2010            LEE TRAN & LIANG APLC

By: _____
James M. Lee
Attorneys for Plaintiffs

## PROOF OF SERVICE

STATE OF CALIFORNIA)
COUNTY OF LOS ANGELES)

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 601 S. Figueroa Street, Suite 4025, Los Angeles, CA 90017

On **March 2, 2010**, I served the foregoing document(s) described as:

- **APPLICATION FOR ORDER TO SHOW CAUSE RE: CONTEMPT; MEMORANDUM OF POINTS AND AUTHORITIES**

on the interested parties in this action.

[X]   By placing [ ] the original [X] true copies thereof enclosed in sealed envelopes addressed as follows:

| | |
|---|---|
| Michael K. Ng<br>Michael J Von Loewenfeldt<br>100 Spear Street, Suite 1800<br>San Francisco, CA 94105-1528<br><br>Email: mng@@kerrwagstaffe.com<br>Email: mvl@@kerrwagstaffe.com | Jeffrey H Rutherford<br>Crowell and Moring LLP<br>800 Wilshire Boulevard Suite 500<br>Los Angeles, CA 90017<br><br>Email: jrutherford@crowell.com |
| Michael J Proctor<br>Caldwell Leslie & Proctor PC<br>1000 Wilshire Boulevard Suite 600<br>Los Angeles, CA 90017-2463<br><br>Email: proctor@caldwell-leslie.com | State of California<br>Franchise Tax Board<br>PO Box 942667<br>Sacramento CA 94267 |
| JP Morgan Chase Court Orders and Levies<br>PO Box 260164<br>LA2-2808<br>Baton Rouge, LA 70826 | |

[X]   **BY MAIL** I placed such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

| Joe Thomas | Farema Osmani |
|---|---|
| Senior Assistant Financial Center Manager | Personal Financial Representative |
| JP Morgan Chase | JP Morgan Chase |
| 5392 Walnut Avenue | 5392 Walnut Avenue |
| Irvine, CA 92604 | Irvine, CA 92604 |

[X]   **BY OVERNIGHT COURIER** I caused each envelope with fees prepaid shipped by Federal Express.

Executed on **March 2, 2010**, at Los Angeles, California.

[X]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

LYNETTE SUKSNGUAN
Type or Print Name              Signature